# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

ENVIRONMENTAL CLEANUP INC., )
         Plaintiff, )
v. ) Case No. CIV-15-867-R
RUIZ TRANSPORT, LLC, )
         Defendant, )
and )
GLOBAL HAWK INSURANCE CO., )
         Garnishee. )

## ORDER

Before the Court are cross motions for summary judgment, Docs. 32 & 35, and the matter is fully briefed. Docs. 36, 42, & 43. For the reasons that follow, summary judgment is entered in favor of Plaintiff.

## I. Background

The lone issue before the Court is whether Garnishee Global Hawk Insurance Co. must reimburse Plaintiff Environmental Cleanup, Inc. (ECI) for cleanup services ECI performed at the request of Defendant Ruiz Transport. ECI believes it is entitled to reimbursement, while Global Hawk disagrees. Both parties have moved for summary judgment. The specific dispute is whether Global Hawk is liable under the surety obligation included in the policy it issued to Ruiz Transport. Ruiz Transport and Global Hawk

1

included the surety obligation in the insurance contract in order to comply with the Motor Carrier Act, a federal law governing trucking companies like Ruiz Transport.

Congress enacted the Motor Carrier Act of 1980 (MCA), Pub.L. No. 96–296, 94 Stat. 793, "to deregulate the trucking industry, increase competition, reduce entry barriers, and improve quality of service." *Carolina Casualty Ins. Co. v. Yeates*, 584 F.3d 868, 873 (10th Cir. 2009). And in no small part, the MCA was meant to "address abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." *Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003). To that end, the MCA and subsequent regulations promulgated by the Federal Motor Carrier Safety Administration now require interstate motor carriers to obtain "a special endorsement . . . providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence, whether or not the vehicle involved in the accident is specifically described in the policy. *Yeates*, 584 F.3d at 874 (citing *Ill. Cent. R.R. v. Dupont*, 326 F.3d 665, 666 (5th Cir. 2003)). The endorsement guarantees that commercial motor carriers are "willing and able to comply with . . . [certain] minimum financial responsibility requirements." 49 U.S.C. § 13902(a)(1).

The motor carrier proves this "requisite financial responsibility in one of three ways—(1) by an MCS-90 endorsement, (2) by a surety bond, or (3) by self-insurance." *Yeates*, 584 F.3d at 874; 49 U.S.C. § 31139(f)(1)(A); 49 C.F.R. § 387.7(d)(1). Many

2

carriers opt for the MCS-90 endorsement, which is why every liability insurance policy issued to motor carriers of interstate commerce contains the MCS-90 endorsement. *Herrod v. Wilshire Ins. Co.*, 499 Fed. Appx. 753, 755 (10th Cir. 2012). The endorsement is essentially a surety obligation; it provides that the motor carrier's insurer "agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of . . . the [MCA]" whether or not the vehicle involved in the accident is specifically described in the policy. 49 C.F.R. § 387.15; Doc. 35, Ex. 1. That said, the MCS-90 endorsement does not create a windfall for the motor carrier or alter the terms of the insurance policy's other coverage limits, since "[a] motor carrier may be required to reimburse the MCS-90 insurer for any payout the insurer would not otherwise have been obligated to make." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 879 (10th Cir. 2009).

The question is whether the MCS-90 endorsement on Ruiz Transport's insurance policy applies, thus entitling ECI to compensation for the substantial remediation services it performed for Ruiz. Global Hawk issued the insurance policy to Ruiz on June 13, 2014, and the policy was still in effect on May 26, 2015. Doc. 32, Ex. 1. That day, Ruiz Transport was hauling transformers from Mexico to Kansas when the tractor pulling the trailers was involved in a single-vehicle accident, spilling hundreds of gallons of transformer oil and diesel fuel on the highway and surrounding areas. *Id.*; Doc. 35, at 4. On Ruiz's request, ECI performed remediation services over a four-day period: it allegedly shipped samples of contaminated soil to a testing site, removed and delivered several tons of contaminated

3

soil to a disposal facility, and subsequently swapped out the contaminated soil for several tons of uncontaminated soil—all to the tune of approximately $112,000. Doc. 35, at 2.

ECI sued Ruiz Transport after it refused to pay. And when Ruiz Transport did not respond, the Court entered a default judgment in favor of ECI in the amount of $126,431.10. Doc. 12. ECI then commenced this post-judgment garnishment proceeding against Global Hawk, arguing that the MCS-90 endorsement entitled it to reimbursement. Doc. 16. In ECI's view, the endorsement's coverage limit of $750,000—as required under the MCA, 49 U.S.C. § 31139(b)(2)—clearly covers the judgment rendered against Ruiz Transport. The endorsement expressly provides that the insurer agrees to pay for final judgments recovered against the insured for *public liability* resulting from the negligent operation of covered vehicles. Doc. 35, Ex. 1. The endorsement specifically defines public liability to include *environmental restoration*. And environmental restoration is broadly defined as

> restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release, or escape into or upon the land . . . of any commodity transported by a motor carrier. This shall include the cost of removal and the ocst of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.
>
> *Id*.

In other words, ECI contends this is precisely the type of accident contemplated by the MCS-90 Endorsement. Global Hawk, however, disagrees. It argues that the MCS-90 endorsement does not apply and ECI is entitled to recover only $10,000— the coverage limit for pollution liability under Ruiz's purchased policy. Doc. 32, Ex. 1, at 42.

4

## II. Summary Judgment Standard

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1104 (10th Cir. 2008) (internal quotation marks omitted).

## III. Analysis

Arguing that the MCS-90 endorsement does not apply, Global Hawk hangs its hat on a single decision, *Carolina Cas. Ins. Co. v. Yeates*, in which the Tenth Circuit set forth the—according to Global Hawk, *exclusive*—circumstances that trigger an insurance company's surety obligation under the MCS-90 endorsement. 584 F.3d 868 (10th Cir. 2009).

In contrast to this case, the motor carrier in *Yeates* held two insurance policies. *Id*. at 871. One of those policies was issued by State Farm, who quickly tendered the policy limit of $750,000 to plaintiffs after they were involved in a head-on collision with the truck that was specifically covered by the State Farm policy. *Id*. The question was the amount, if any, owed by Carolina Casualty Insurance Company, who had issued a general liability policy that covered a variety of commercial claims but not the specific truck involved in the accident. Id. While plaintiffs' negligence case was pending in state court, Carolina Casualty sought a declaratory judgment that it was not liable under the general policy. *Id*. at 872. Relying on earlier circuit precedent, the district court denied relief. *Id*.

On appeal, the Tenth Circuit reversed, finding that the MCS-90 endorsement—and thus Carolina Casualty's surety obligation—was not triggered because

> The MCS-90 endorsement only applies where: (1) the underlying insurance policy to which the endorsement is attached does not provide coverage for the motor carrier's accident, *and* (2) the motor carrier's insurance coverage is either not sufficient to satisfy the federally-prescribed minimum levels of financial responsibility or is non-existent.

*Id*. (emphasis in original).

This, Global Hawk contends, are the *only* circumstances under which the MCS-90 applies. First and foremost, the policy to which the MCS-90 endorsement attached cannot already provide coverage for the accident. And here, the MCS-90's underlying insurance policy *does* provide coverage for the spilled oil and fuel—up to $10,000 for "pollution liability." Doc. 32, Ex. 1, at 42. Because it has already remitted this $10,000 to plaintiffs, Global Hawk insists it satisfied its obligation and ECI is therefore on the hook for the remaining $102,000 it incurred in cleaning up the spill. After all, the Tenth Circuit specifically noted that "[i]t would make no sense to jump to the insurer's MCS-90 endorsement obligation" where the underlying insurance policy already covers the accident. 584 F.3d at 884.

*Yeates*, however, does not excuse Global Hawk's surety obligation. And a conclusion to the contrary would make little sense. Start with *Yeates*'s obvious differences from this case: the motor carrier there had two insurance policies, one of which required State Farm to tender $750,000—coincidentally the coverage limit of the MCS-90 endorsement—to the plaintiffs. 584 F.3d at 871. Simply put, the plaintiffs had been made

whole—and had received the amount they would have if only the policy with the MCS-90 endorsement applied. *Yeates*, in short, did not deal with the glaring problem that ECI faces here: is the MCS-90 endorsement triggered where the underlying policy applies but is grossly inadequate to cover a plaintiff's damages?

Global Hawk contends that ECI construes *Yeates*'s holding too narrowly. *Yeates* could not have merely addressed situations where multiple insurance policies were at play: Not only did the court hold that the MCS-90 "simply covers the public when other coverage is lacking," but it did so while citing two cases that did *not* involve multiple insurers or insurance policies. *Id*. at 878. Neither of these cases, though, suggest Global Hawk can shirk its surety obligation. In fact, in both of the cases the insurance company *provided coverage* pursuant to the MCS-90 endorsement and neither address the question of insufficient coverage ECI faces here. The first case, *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, decided an insurance company could seek reimbursement from its insured after it paid the plaintiffs' claims as required by the MCS-90 endorsement. 242 F.3d 667, 670 (5th Cir. 2001). Likewise, *Harco Nat. Ins. Co. v. Bobac Trucking Inc*. held that even though an insurer paid to settle its insured's liability in accordance with the MCS-90 endorsement, the endorsement did not obligate the insurere to defend the insured on the underlying tort claim. 107 F.3d 733, 736–737 (9th Cir. 1997). In short, neither of Global Hawk's cited cases bear on this issue.

More than anything, the underlying rationale of both the MCA and *Yeates* suggests the MCS-90 endorsement applies here. As *Yeates* noted, the very purpose of the MCA is to "assure that motor carriers maintain an appropriate level of financial responsibility for

7

motor vehicles operated on public highways." *Yeates*, 584 F.3d at 881 (citing 42 U.S.C. § 387.1). Because the MCS-90 endorsement "is a surety in the event judgment against the carrier is for some reason unsatisfied," its purpose is "clearly implicated" where "the carrier fails to maintain insurance (or sufficient insurance) on a truck involved in an accident and fails to pay out of its own pocket for its liability to the injured party." *Id*. at 880–881. "The endorsement in this circumstance would effectuate a minimum level of recovery for the injured party from the MCS-90 provider." *Id*. at 881. If the MCA's concern is unsatisfied judgments and injured plaintiffs, it is difficult to see how excusing Global Hawk from its surety obligation does not frustrate that very purpose.

Perhaps that is why nowhere in *Yeates* does the Tenth Circuit hold that an insurer can avoid its obligations under the MCS-90 endorsement by conceding that its issued policy provides coverage—but only to a limit that leaves the public liability judgment largely unsatisfied. If that were the case, there would be little to stop an insurance company from arguing the issued policy always provides some coverage, no matter how meager, in order to escape the MCA surety obligation. If *Yeates* offers anything to this case, it is a clear picture of the Tenth Circuit's understanding of the MCS-90 endorsement—which it specifically noted "ensure[s] the collectability of a judgment," serves as "a safety net in the event other insurance is lacking," and "guarantee[s] a source of recovery in the event the motor carrier negligently injures a member of the public on the highways." 584 F.3d at 875, 878. Given this, it is no surprise *Yeates* remarked that "the endorsement may be implicated where the sum of all liability coverage applicable to a motor carrier's accident is insufficient to meet the financial responsibility minimums." *Id*. at 885. Of course, it used

8

the example of when the motor carrier's multiple insurance policies have policy limits that are nonetheless too low in the aggregate. *Id*. But the same rationale applies to situations where the coverage limit for the only policy at issue is also too low. And without belaboring the point, this rationale is not unique to the Tenth Circuit. *See, e.g., T.H.E. Ins. Co.*, 242 F.3d at 672 (noting that the MCS-90's purpose is "to assure that injured members of the public [are] able to obtain judgments collectible against negligent authorized carriers"); *see also Nat. Indep. Truckers Ins. Co. v. Gadway*, 860 F.Supp.2d 946, 954 (D. Neb. 2012) (clarifying that "[a]n MCS-90 insurer's duty to pay a judgment arises not from any insurance obligation, but from the endorsement's language guaranteeing a source of recovery in the event the motor carrier negligently injures a member of the public on the highways"); *Real Legacy Assur. Co. v. Santori Trucking, Inc.*, 560 F. Supp. 2d 143, 147 (D.P.R. 2008) (explaining that the MCS-90 endorsement "simply covers the public when other coverage is lacking).

Nor does the Court agree with Global Hawk's contention that the MCS-90 endorsement actually requires it to pay only the $10,000 limit for pollution liability. It argues that if the MCS-90 endorsement applies, this essentially alters the terms of the original insurance policy—which the MCS-90 endorsement specifically precludes by including its legally required language that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company." 49 C.F.R. § 387.15; Doc. 32, Ex. 1. Even *Yeates* noted that despite the endorsement, "the underlying insurance policy remains in force on

9

its original terms as between the motor carrier and the respective insurance company." 584 F.3d at 882.

Applying the MCS-90 endorsement, though, does not alter the terms of the policy or increase Global Hawk's actual liability. The endorsement is no more than a *surety* obligation, which is why it provides that "[t]he insured agrees to reimburse the company for any payment made by the company . . . that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in the endorsement." *Yeates*, at 881 (citing 49 C.F.R. § 387.15); Doc. 32, Ex. 1. In other words, "[t]he peculiar nature of the MCS–90 endorsement grants the judgment creditor the right to demand payment directly from the insurer, and simultaneously grants the insurer the right to demand reimbursement from the insured." *Canal Ins. Co. v. Underwriters at Lloyd's London,* 435 F.3d 431, 442 (3d Cir. 2006). Consequently, the endorsement "presents neither a windfall for the motor carrier, nor does it alter the motor carrier's coverage under its other insurance policies." *Yeates*, 584 F.3d at 879. If Global Hawk believes the policy would not otherwise obligate it to compensate ECI for the remediation services, it is more than free to seek reimbursement from Ruiz.

In conclusion, ECI's Motion for Summary Judgment [Doc. 35] is GRANTED, and Global Hawk's Motion for Summary Judgment [Doc. 32] is DENIED. Judgment against Global Hawk will be entered in the amount of $126,431.10, less the $10,000 that Global Hawk has already paid to ECI, for a total of $116,431.10.

IT IS SO ORDERED this 12th day of May 2017.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE